E-FILED
Monday, 21 February, 2005  01:21:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA**,

       Plaintiff,

vs.

**DAVID G. OHLENDORF, et al.,**   Case No. 04-10084

       Defendants.   HEARING REQUESTED

**DEFENDANT OHLENDORF'S MOTION FOR REVOCATION OF THE
DETENTION ORDER AND TO ADMIT DEFENDANT TO BOND**

TO:  K. Tate Chambers
     Assistant United States Attorney
     211 Fulton Street, Suite 400
     Peoria, IL 61602

NOW COMES defendant David G. Ohlendorf, by his attorneys, Eisenberg Law Offices, S.C., by Mark A. Eisenberg, and moves the Court for the entry of an order, pursuant to 18 U.S.C. § 3145(b), revoking the detention order entered by United States Magistrate John Gorman on February 10, 2005, and admitting the defendant to bail under strict conditions of pretrial release, and in support thereof states as follows:

    A.    <u>Proceedings Before Magistrate Judge</u>

1.    That the defendant is charged by indictment with the offenses of Racketeering in violation of title 18 U.S.C. § 1962(c)(Count One); RICO conspiracy in violation of Title 18 U.S.C. § 1962(d) (Count Two); and Narcotics Distribution Conspiracy in violation of Title 21 U.S.C. § 841(b)(1)(A) (Count Three).

2.    That on February 10, 2005, at the hearing on the government's motion for detention, the government called no witnesses to testify, and instead rested its case for detention solely on the indictment and the information contained in the pretrial services report. Defense called one of

David Ohlendorf's best friends, Gary Bass, to testify. He indicated that Mr. Ohlendorf was a hard worker, an excellent family man and father, and he had not seen him engage in any illegal activity during the six or seven years that he had known him. (Transcript pp. 5-9)[1]

3. In addition, Mr. Ohlendorf's parents, Glen and Carol, were in the courtroom, along with his live-in girlfriend, Sandy Schaufer. Mr. Ohlendorf offered a letter from his union representative indicating that he was a member in good standing in the union for which he worked. (Transcript p. 8) Mr. Ohlendorf would have had steady employment should he have been released. However, defense counsel proffered that Mr. Ohlendorf's parents, Glen and Carol, and Sandy Schaufer would act as third-party custodians who would provide 24-hour supervision and monitoring of Mr. Ohlendorf while on release. (Transcript pp. 4, 17) Defense counsel further offered to place Mr. Ohlendorf on electronic monitoring and place him under house arrest at all times. (Transcript p. 4)

4. Defense counsel informed the Court at the hearing that Mr. Ohlendorf was a single parent and that he had two children, ages 9 and 11, of whom he had sole primary custody, as the mother of those two children, his ex-wife, had passed away approximately a year prior to the Indictment. (Transcript pp. 6, 7)

5. Even though the pretrial services report indicated that Mr. Ohlendorf was not a flight risk, his parents, Glen and Carol, were willing to give the United States District Court for the Central District of Illinois a mortgage on their home located in New Lennox, Illinois. The undersigned informed the Court that there was at least $150,000 to $200,000 worth of equity in said home, and the home was free and clear of any liens or encumbrances. Defense counsel offered to provide the Court with an appraisal and a report on title should the Court agree to release Mr. Ohlendorf on the conditions as requested. (Transcript p. 5)[2]

---

[1] A copy of the transcript is attached.

[2] The transcript at line 7 reads "report on file," but should read "report on title."

6.  Finally, defense counsel submitted to the Court the case of <u>United States v. Hammond</u>, 204 F.Supp.2d 1157 (E.D. Wis. 2002), where District Judge Adelman ordered the release of a member of the Outlaws Motorcycle Club in a federal racketeering case similar to this. (Transcript pp. 15, 16)

7.  That at the conclusion of the hearing, Magistrate Judge Gorman denied bail to the defendant. A copy of his Order of Detention Pending Trial is attached hereto. He did not find the defendant was a serious flight risk. His findings were simply, "The Court does not believe the presumption has been rebutted, and the defendant will be detained. The Court finds the defendant is a danger." (Transcript pp. 19, 20)

  B. <u>Standard of Review</u>

8.  That the District Court's review of the Magistrate Judge's Detention Order is de novo. <u>United States v. Portes</u>, 786 F.2d 758, 761 (7th Cir. 1985); <u>United States v. Hammond</u>, 204 F.Supp.2d 1157, 1162 (E.D. Wis. 2002); <u>United States v. Jones</u>, 804 F.Supp. 1081, 1086 (S.D.Ind. 1992).

  C. <u>Analysis of Bail Reform Act</u>

9.  That the Bail Reform Act of 1984, Title 18 U.S.C. § 3142 et seq., expressly provides that a defendant shall be released on his or her own recognizance or on a secured bond unless the court determines that no condition or combination of conditions will insure that the defendant does not represent a risk of flight or a danger to the community. Title 18 U.S.C. § 3142(b). As the Supreme Court noted in reviewing the constitutionality of the Act: "In our society liberty is the norm, and detention prior to trial...is the carefully limited exception." <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987). Moreover, "federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. Only in rare circumstances should release be denied. Doubts regarding the propriety of release should be resolved in favor of the defendant. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1405 (9th Cir. 1985).

10. That to ensure that pretrial detention remains only a "carefully limited exception," the Act provides two hurdles the government must overcome. First, the defendant must qualify for pretrial detention under at least one of the six conditions enumerated under Title 18 U.S.C. § 3142(f)(1). United States v. Ploof, 851 F.2d 7, 10 (1st Cir. 1988); United States v. Phillips, 732 F.Supp. 255, 260 (D.Mass. 1990). Second, under Title 18 U.S.C. § 3142(e), the defendant can then be detained

> only if the government shows by clear and convincing evidence that no release condition or set of conditions will <u>reasonably assure</u> the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) will <u>reasonably assure</u> the defendant's appearance...(emphasis in original).

<u>United States v. Orta</u>, 760 F.2d 887, 891 (8th Cir. 1985); <u>United States v. Portes</u>, 786 F.2d 758 (7th Cir. 1985).

11. That under Title 18 U.S.C. § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community where the court has probable cause to believe that the defendant has committed a drug offense with a maximum term of imprisonment of ten years or more.

12. That if the government invokes the presumption contained in Title 18 U.S.C. § 3142(e), the defendant need only present some credible evidence showing that he is neither a risk of flight nor a danger to the community. <u>United States v. Portes</u>, 786 F.2d 758, 764 (7th Cir. 1986). "The burden of production is not a heavy one to meet...," <u>United States v. Dominguez</u>, 783 F.2d, 702, 707 (7th Cir. 1986), and Courts have held that evidence contained in the pretrial services report and evidence of the defendant's family, economic, and social stability and comes within § 3142(g) of the Act provide such evidence for rebutting the presumption. Id.; <u>United States v. Nicholas</u>, 681 F.Supp. 527 (N.D.Ill. 1988); <u>United States v. Hare</u>, 873 F.2d 765 (5th Cir. 1989); <u>United States v. Clark</u>, 791 F.Supp. 259 (W.D.Wash. 1992). Furthermore, the presumption merely shifts the burden

of production, not the burden of persuasion, to the defendant, and the government retains the burden of proof by the preponderance of the evidence where the issue is risk of flight and by clear and convincing evidence where the issue is danger to the community. United States v. Portes, 786 F.2d 758 (7th Cir. 1985). Finally, it must be noted that throughout this process the defendant is presumed innocent of the charge, and that federal law has traditionally provided that a person who is arrested for a non-capital charge should be admitted to bail so as to permit the unhampered preparation of a defense and to prevent the infliction of punishment prior to conviction. 18 U.S.C. Section 314 2(j); Stack v. Boyle, 342 U .S. 1 (1951); United States v. Montamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (doubts regarding the propriety of release should be resolved in favor of the defendant).

13.    That where the government seeks detention based upon the defendant's alleged risk of flight, courts have found that the availability of electronic monitoring programs, and the imposition of other conditions of release, effectively rebut the statutory presumption and warrant pretrial release. United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990).

14.    That in seeking detention on the basis of the defendant's alleged dangerousness to the community, the government cannot meet its requisite burden of proof solely on the presumption contained in Title 18 U.S.C. § 3142(e) unless there is proof of the defendant's future dangerousness. United States v. Dominguez, 783 F.2d 702 (7th Cir. 1986); United States v. Jeffries, 679 F.Supp. 1114 (M.D.Ga. 1988) (government cannot rely on indictment alone; gun and drug charges not necessarily enough to provide clear and convincing evidence of defendant's dangerousness); United States v. Bell, 673 F.Supp. 1429 (E.D.Mich. 1987) (hearsay may not satisfy clear and convincing evidence standard); United States v. Cox, 635 F.Supp. 1047 (D.Kan. 1986) (unrebutted presumption not clear and convincing evidence); United States v. Jones, 614 F.Supp. 96 (E.D. Pa. 1985)(defendant did not rebut presumption, but government failed to show clear and convincing evidence of danger).

> In fact, as the District Court noted in <u>United States v. Hammond</u>, <u>supra</u>:
>
> > If the defendant can rebut the statutory presumption, the government must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant. <u>The government must point to more than the indictment to justify detention</u>, and must prove by clear and convincing evidence that the defendant poses a danger to the community.

204 F.Supp.2d at 1164 (emphasis added); <u>United States v. Chen</u>, 820 F.Supp. 1205, 1208 (N.D.Cal. 1992).

15. Moreover, the Government cannot obtain detention based upon a defendant's alleged danger to the community simply by associating the defendant with a dangerous organization. <u>United States v. Patriarca</u>, 948 F.2d 789, 791-92 (1st Cir. 19991) (affirmed order of release despite defendant's status as Mafia boss when no specific evidence of his dangerousness was presented); <u>United States v. Hammond</u>, 204 F.Supp.2d 1157, 1162 (E.D. Wis. 2002) (district court granted ordered release of member of Outlaws Motorcycle Club where no specific evidence of dangerousness was presented).

16. That if the government seeks detention on the basis of the defendant's alleged dangerousness to the community, the danger alleged by the government must relate to the federal case for which the defendant has been charged, and that unrelated allegations of danger to others are insufficient. <u>United States v. Ploof</u>, 851 F.2d 7 (1st Cir. 1988); <u>United States v. Byrd</u>, 969 F.2d 106 (5th Cir. 1992).

    D.    Grounds For Revocation Of Detention Order

17. The evidence that was introduced at the hearing clearly rebutted the statutory presumption that the defendant was likely to pose a risk of dangerousness to the community. It is interesting to note that since the government relied on the allegations, none of the allegations occurred after 2002. The reasons for a detention in a controlled substances case is that Congress surmised that someone who is dealing controlled substances would possibly continue to deal those

6

controlled substances while he or she was out on bail pending trial. See United States v. Dominguez, 783 F.2d 702, 706-707 (7th Cir. 1986).

18.     Whereas here the alleged past acts of narcotics operations are alleged to have ended in 2002, the rationale of the presumption that past behavior is predictive of future behavior is fundamentally undercut. This follows from the Supreme Court's and Seventh Circuit's teachings that pretrial detention is not punishment for past acts, and that the past acts may merely be used as predictions of future conduct. Whereas here the alleged narcotics operation and all criminal activity ended in 2002, certainly the Indictment is not a strong presentment of facts in support of any notion that criminal activities are likely to continue while the defendant is awaiting trial. Without any greater presentation by the government than the Indictment itself, the Indictment herein provides little if any indication that any past conduct is likely to continue through a period of pretrial release under conditions. This is so because the Indictment itself indicates that any alleged criminal acts of Mr. Ohlendorf ended in 2002.

19.     Similarly, someone who is dangerous to the community up to the time of the indictment would be expected to be dangerous to the community while that person was awaiting trial. However, in this particular case, none of the acts are alleged to have occurred in 2003 or 2004. If, in fact, Mr. Ohlendorf was dangerous at the time of the allegations contained in the Indictment, he has clearly changed his behavior. Most of the predicate acts that involve dangerousness occurred seven to eight years prior to the Indictment. There is some veiled allegation that in 2002 the defendant conspired with others to murder someone in Peoria County, and that he took steps to further that act by carrying firearms and ammunition to Peoria to carry out that plan. In order for there to be an attempt, one must take a substantial step toward commission of murder to show that that person unequivocally was going to commit the crime. The Indictment does not plead that. 720 ILCS 5/8-4.

20. The government, other than listing the allegations in the Indictment which terminated at least two years prior to the Indictment, failed to prove by clear and convincing evidence that the defendant would pose a risk of danger to the community if granted pretrial release under the conditions as stated above.

21. The Docket Order entered by Magistrate Judge Gorman on February 10, 2005, fails to set forth any findings of fact as required by 18 U.S.C. § 3142(I)(1). See United States v. Swanquist, 125 F.3d 573 (7th Cir. 1997) (detention order that did little more than track statutory language in conclusory fashion did not satisfy requirement that reasons be stated for denying release pending appeal); United States v. Westbrook, 780 F.2d 1185 (5th Cir. 1986) (detention order must make specific factual findings); United States v. Gaviria, 828 F.2d 667, 669-70 (11th Cir. 1987) (district court must provide written findings of fact and written statement of reasons for detention).

22. United States v. Hammond, 204 F.Supp.2d 1157 (E.D. Wis. 2002), is a case that is factually similar to this case. It was amply covered at the detention hearing, has been cited almost in its entirety in James White's Motion for Review and Appeal of Detention Order, and was attached to defendant Abrams' Motion for Revocation of Detention Order.

23. Another case that is also factually similar to the present case is United States v. Eischeid, 315 F.Supp.2d 1033 (D.Ariz. 2003). There, a member of the Hells Angels Motorcycle Club was charged with a racketeering count, which included the murder of an individual. At the detention hearing the Magistrate rejected the government's request that the defendant be detained pending trial under the Bail Reform Act. The government appealed to the district judge. The government asserted three grounds in support of its contention that Eischeid was a danger to the community. First, it concluded that the nature and seriousness of the charge against him warranted detention. Second, the murder of the victim was particularly brutal. And, finally, Eischeid was a member of the Hells Angels Motorcycle Club, and members of this club had been charged with

8

various racketeering crimes in the indictment, including attempted murder, drug trafficking and witness tampering. The government made all its assertions by proffer. The government declined to produce any affidavit or any evidence from any witnesses in support of its assertions, citing concerns for witness safety. Id. at 1035.

24.     The court had problems with the government's failing to disclose evidence, and, therefore, the government offered to provide the court, in camera, with evidence to support its position. The court refused to do so, however, indicating that the Bail Reform Act contemplates a hearing in which the defendant is represented by counsel and has the opportunity to testify, present evidence and cross-examine witnesses presented by the government. Id. at 1035. Therefore, the court decided the detention issue solely on the basis of the government's proffer. Id. at 1036.

25.     The Court started its analysis by reviewing the factors enumerated in 18 U.S.C. § 3142(g). The Court began its analysis by considering the nature and circumstances of the charges against the defendant. It concluded that it was "difficult to think of one more serious." Id. at 1036. The Court, however, stated that

> But the charge, at this stage, is simply an accusation. Defendant Eischeid is presumed innocent.

See 18 U.S.C. § 3142(j).

26.     It is likely that in this case the government will argue, as it already did at the detention hearing, that the government has already convinced the grand jury that there is probable cause to believe the defendant committed the crime. (Transcript p. 19) This is simply another way to argue the Indictment lists serious charges. We have no idea what evidence was presented to the grand jury in order for the government to obtain the indictment.

27.     Next, the court in Eischeid indicated that the government could provide the court with evidence that supports the charge to demonstrate that conviction is likely, but the government chose not to do so. This is the second factor the Court is to consider under 18 U.S.C. § 3142(g).

28. Evidence that was presented at the detention hearing in Eischeid indicated that the defendant owned two homes in the Phoenix area; that he had lived in Arizona for 11 years; that he was employed and had been employed for the last several years in responsible jobs; that he had a retirement account; that he was a college graduate from an Arizona university; that he did not abuse drugs or alcohol; and that he had a minimal criminal history.

29. The defendant's characteristics in Eischeid were almost identical to the characteristics in the present case, except that in the present case the defendant has more than a minimal criminal history.

30. The court concluded that although the gravity of the charge gave the court considerable cause, it was rebutted by Eischeid's proffer that he was an established and responsible member of the community. In light of that proffer, the court could not conclude, solely on the basis of the government's charge and the proffer, that the government had met its burden of showing that Eischeid was a danger to the community by clear and convincing evidence. Id. at 1036, 1037. The facts in the present case are almost identical to the analysis in Hammond and Eischeid. The government has not proven by clear and convincing evidence that the defendant is a danger to the community with the following pretrial release conditions.

E.   Proposed Conditions Of Pretrial Release

As stated above, the proposed conditions of release for David Ohlendorf are as follows:

(a)   He will be placed on house arrest 24 hours per day, seven days a week, at his residence at 105 Lee Street, Manhatten, Illinois.

(b)   He will be on electronic monitoring throughout the pretrial detention.

(c)   He will have one of three people with him at all times–his father, Glen Ohlendorf, his mother, Carol Ohlendorf, or his live-in girlfriend, Sandy Schaufer.

(d) He will not associate by telephone, e-mail, face-to-face, or in any other way with persons who are members of the Hells Angels Motorcycle Club.

(e) He will report as required to Pretrial Services or local law enforcement.

(f) He will not consume any alcohol or controlled substances.

(g) If requested by Pretrial Services, copies of his phone bills will be given to them on a monthly basis.

(h) His parents will post their home as collateral, so long as the home has equity of at least $150,000.

WHEREFORE, the defendant respectfully requests the Court to revoke and/or modify the Order of Detention Pending Trial entered by the Magistrate Judge on February 10, 2005, and to enter an order setting a reasonable bail and other conditions to reasonably assure the safety of the community and defendant's appearance for trial, and for such other and further relief as the Court deems equitable.

Dated this 21st day of February, 2005.

EISENBERG LAW OFFICES, S.C.

/s/ Mark A. Eisenberg
Mark A. Eisenberg
Illinois State Bar Number: 06184263
Wisconsin State Bar Number: 01013078
308 E. Washington Avenue
P. O. Box 1069
Madison, WI 53701-1069
Telephone: (608) 256-8356
Fax: (608) 256-2875
E-mail: mark@eisenberglaw.org
Attorneys for Defendant David G. Ohlendorf

CERTIFICATE OF SERVICE

    I hereby certify that on February 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Atty. Robert Andre Alvarado | Robert_Alvarado@fd.org, roblaw@ivnet.com; mary_kedzior@fd.org; fontessa_sledge@fd.org |
| AUSA K. Tate Chambers | kimberly.ritthaler@usdoj.gov; diane.hayes@usdoj.gov; margo.l.scamp@usdoj.gov |
| Atty. Daniel G. O'Day | doday@cfgolaw.com, lguyon@cfgolaw.com |
| Atty. George F. Taseff | George_Taseff@fd.org, gtaseff@mtco.com; Mary_Kedzior@fd.org |

    I hereby certify that I have mailed by United States Postal Service the foregoing to the following non ECF participants:

Attorney Steven C. Rueckert
Law Offices of Steven C. Rueckert
53 W. Jackson Blvd., Suite 1410
Chicago, IL  60604

Attorney Peter J. Wilkes
7060 Centennial Drive, Suite 104
Tinley Park, IL  60477

    EISENBERG LAW OFFICES, S.C.

/s/ Mark A. Eisenberg
Mark A. Eisenberg
Illinois State Bar Number: 06184263
Wisconsin State Bar Number:  01013078
308 E. Washington Avenue
P. O. Box 1069
Madison, WI  53701-1069
Telephone:  (608) 256-8356
Fax:  (608) 256-2875
E-mail: mark@eisenberglaw.org
Attorneys for Defendant David G. Ohlendorf