E-FILED
Monday, 28 February, 2005  12:54:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 04-10084-04 |
| | ) | |
| MELVIN J. CHANCEY ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS FOR REVIEW AND REVOCATION OF DETENTION ORDER**

Now comes the United States of America by Jan Paul Miller, United States Attorney, and K. Tate Chambers, Supervisory Assistant United States Attorney, for the Central District of Illinois, and in response to the above-named motions, (R.60, 66, and 43) states the following:

**FACTS**

1.  On December 16, 2004 a federal grand jury sitting in the Central District of Illinois returned a five count indictment against Melvin J. Chancey, aka: "Road" and "Mel", James L. White, aka: "J.W.", David G. Ohlendorf, aka: "Pulley", and Richard A. Abrams. (R.1) Count One is a RICO charge that alleges twelve racketeering acts including conspiracy to commit murder, attempted murder, attempted arson, conspiracy to commit arson, attempted extortion, robbery, witness tampering, and narcotics distribution conspiracy, all in violation of 18 U.S.C. §1962(c). Count Two charges a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). Count Three alleges a narcotics distribution conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Count Four is a RICO forfeiture count, pursuant to 18 U.S.C. § 1963(a),

1

and Count Five is a forfeiture count referring to the narcotics distribution conspiracy, pursuant to 18 U.S.C. § 853.

2.  All defendants appeared before Magistrate Judge John A. Gorman on February 2, 2005 for an initial appearance and arraignment hearing. (docket entry 2/2/05) All defendants entered pleas of "not guilty" and the case was set for subsequent detention hearings. (docket entry 2/2/05)

3.  On February 10, 2005 the detention hearing for defendant Ohlendorf was held before Magistrate Gorman. (docket entry 2/10/05) After hearing argument from the parties, the defendant was detained. (docket entry 2/16/05; R.24) Magistrate Gorman found that the presumption was not rebutted. (Attachment A)

4.  On February 16, 2005 the detention hearing for defendant Abrams was held before Magistrate Gorman. (docket entry 2/16/05) After hearing argument from the parties, the defendant was detained. (docket entry 2/16/05; R.41) In the Order of Detention, Magistrate Gorman stated: "...the presumption is not rebutted. Court finds that by clear and convincing evidence the defendant will endanger the community." (Attachment B)

5.  On February 16, 2005 the detention hearing for defendant White was held before Magistrate Gorman. (docket entry 2/16/05) After hearing argument from the parties, the defendant was detained. (docket entry 2/16/05; R.37) In the Order of Detention, Magistrate Gorman stated: "[P]resumption is not rebutted. Court also finds by clear and convincing evidence that the defendant will endanger the safety of another person or the community." (Attachment C)

6.  On February 21, 2005 Ohlendorf filed the current motion for revocation of the

detention order and to admit defendant to bond. (R.66) In his motion, the defendant argues that "[t]he government, other than listing the allegations in the Indictment which terminated at least two years prior to the Indictment, failed to prove by clear and convincing evidence that the defendant would pose a risk of danger to the community if granted pretrial release..." (Def.Mot. ¶20) Ohlendorf further complains that the docket order "entered by Magistrate Judge Gorman on February 10, 2005, fails to set forth any findings of fact as required by 18 U.S.C. § 3142(I)(1)". (Def.Mot. ¶21)

7.  On February 17, 2005 Abrams filed the current motion for revocation of detention order and to admit defendant to bond. (R.43) In his motion, the defendant argues that "the evidence adduced at the hearing...effectively rebutted the statutory presumption that the Defendant is likely to flee and/or pose a risk of dangerousness to the community..." (Def.Mot. ¶15) He further asserts that the government failed to proved by the preponderance of the evidence that the defendant is likely to flee if released, (Def.Mot. ¶16) and failed to prove by clear and convincing evidence that the defendant would pose a risk of danger to the community. (Def.Mot. ¶17) Finally, the defendant complains that the detention order entered by Magistrate Gorman on February 16, 2005 failed to set forth any findings of fact as required by 18 U.S.C. §3142(I)(l) and "little more than track statutory language in conclusory fashion". (Def.Mot. ¶18)

8.  On February 17, 2005 White filed the current motion for review and appeal of detention order pursuant to Local Rule 72.2(A) and 18 U.S.C. § 3145. (R.60) In his motion, the defendant argues that because "the last asserted acts of violence by James L. White, allegedly, were in 2002" and "the narcotics conspiracy ended in 2002", "it should not take much to 'rebut' any alleged presumption of dangerousness or likelihood of flight..." (Def.Mot. ¶4) He

further asserts that the government "should be made to specify any alleged individuals it believes would be endangered if defendant White is released, so the Court can evaluate whether conditions of release could be crafted to dissipate any such alleged danger." (Def.Mot. ¶4) Finally, the defendant complains that "no effort was made by the U.S. Magistrate Judge to list findings other than the most general conclusions." (Def.Mot. ¶5)

## **THE LAW**

9.  In determining whether to detain a defendant, factors to be considered are:

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning–
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer

>may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. §3142(g).

10. Either a finding of danger to the community or risk of flight will be sufficient to detain the defendant pending trial. *Id.* at 765; *citing United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985). In either case, the evidence relied on does not have to be admissible under the Federal Rules of Evidence, and the Court can consider proffers of evidence by counsel. *United States v. Ward*, 63 F.Supp.2d 1178, 1185 (C.D.Cal.1999). *See also*, Fed.R.Evid. 1101(d)(3). At this stage of the proceedings, a challenge to the length of detention while awaiting trial is impermissible, and "both as a statutory and constitutional matter, is premature." *Portes* at 768, *quoting United States v. Colombo*, 777 F.2d 96, 100 (2nd Cir. 1985).

11. When the defendant is charged with a drug offense for which the maximum term of imprisonment exceeds ten years, § 3142(e)(1) creates a presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community". *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). Pursuant to 18 U.S.C. § 3142(e), the defendant must meet the burden of rebutting the statutorily-created presumption that no condition or combination of conditions would be sufficient to protect the community and guarantee his presence at trial.

12. If probable cause exists that the defendant committed an offense for which a maximum term of ten years imprisonment or more is prescribed in the "Controlled Substances Act", no condition or combination of conditions will reasonably assure the safety of the

community. *United States v. Portes*, 786 F.2d 758, 764-65 (7th Cir. 1986). Congressional concern regarding drug trafficking crimes and the drug network's ability to continue to function while the defendant awaits trial creates the presumption that a defendant so charged is a serious danger to the community and often presents a high risk of flight. *Id.*

13. The defendants rely heavily on the district court's opinion in *United States v. Hammond*, 204 F.Supp.2d 1157 (E.D.Wis. 2002). In *Hammond*, the defendant was a member of the Outlaws motorcycle gang. *Id*. When the magistrate at the original detention hearing concluded that the defendant had rebutted the presumption of detention and set bond at $150,000.00, the government did not appeal the order. *Id*. at 1162. The government did not appeal the order until ten months later, when the bond was reduced to $135,000.00 and the defendant was able to pay it. *Id*. The district court judge who reviewed the appeal of the magistrate's order found that the government failed to timely appeal the order and had forfeited the appeal. *Id*. at 1163. However, the judge held that the government had not waived the right to argue for detention of the defendant. *Id*. After reviewing the magistrate proceedings and the motion for appeal filed by the government, the district court stated that the government had not met its burden:

> The government has failed to meet its burden. It essentially presents the allegations in the indictment and an incident described in the trial of another Outlaws case. However, it presents no details regarding defendant's alleged dangerousness. For example, it offers no evidence concerning whether defendant possesses or has access to any dangerous weapons, whether weapons were found on his person at the time of his arrest, or whether he would pose a risk to any specific person if released. The government does not persuasively explain why defendant is too dangerous to be released, and it cannot obtain detention simply by associating the defendant with a dangerous organization such as the Outlaws.

*Id*. at 1164.

The district court also found that *Hammond* had a "minimal" criminal record and that his last conviction was "many years ago". *Hammond*, 204 F.Supp. at 1164. The government also did not "allege that defendant previously committed new offenses while released on bond". *Id.* at 1165. As the evidence offered at the detention hearing will show, the facts in *Hammond* are clearly distinguishable from those in the present case.

14. Defendants argue that if the drug conspiracy ended in 2002 and the last alleged acts of violence occurred in 2002, there is no expectation that they will continue to engage in drug dealing and acts of violence, if released. The defendants are asking this Court to believe that the because the allegations end in 2002, that no activity occurred after 2002. The 2002 cut-off date was necessary in order to prepare the case for indictment, not because the government has a belief that the illegal activity ceased in 2002. Once a narcotics conspiracy has been demonstrated, it is presumed that the conspiracy is an ongoing and continuous activity. *United States v. Johnson*, 858 F.Supp. 119, 125 (N.D. Indiana 1994).

15. Defendant Ohlendorf is charged with a narcotics distribution conspiracy that carries a ten year mandatory minimum sentence of incarceration. A defendant who is involved in the distribution of large quantities of narcotics poses a continuing danger to the community. *Johnson* at 125. He has a prior drug felony conviction in Will County, Illinois. (Case No. 85-CF-87) He has been arrested for various weapons offenses, battery, criminal trespass, and was convicted for aggravated battery with a weapon in Cook County in 1997.

16. Defendant Abrams is charged with a narcotics distribution conspiracy that carries a twenty year mandatory minimum sentence of incarceration. Abrams has a prior felony drug conviction (Case No. 97-CF-566) from Winnebago County, Illinois and was arrested for battery and domestic battery in 1992.

17.     Defendant White is charged with a narcotics distribution conspiracy that carries a ten year mandatory minimum sentence of incarceration. He has a 1995 conviction for carrying a weapon without a permit in Hennepin County, Minnesota.  He has also been arrested for resisting a peace officer, improper use of registration, driving on revoked or suspended license, driving under the influence, deceptive practices, and felony traffic offenses.

18.     Defendant Chancey is charged with a narcotics distribution conspiracy that carries a ten year mandatory minimum sentence of incarceration.  He has a prior conviction for no FOID card in Cook County in 1992, (Case No. 92-CM-410665), a misdemeanor conviction for unlawful possession of a controlled substance in Will County in 1997, (Case No. 97-CM-4771), a conviction for aggravated battery in Cook County in 1998 (Case No. 98 CR 83701), and a conviction for mail fraud in the Northern District of Illinois in 1999, (Case No. 98 CR 73-1).  He has previous arrests for criminal damage to property (2), carrying and/or possession of a firearm(2), possession of cannabis, unlawful use of a weapon, possession of narcotic instrument, possession of anabolic steroid, harassment of jurors, armed robbery, and battery (2).

19.     All defendants are charged with a RICO count in the indictment.  Racketeering Act 1A charges Melvin J. Chancey and David G. Ohlendorf with conspiracy to commit murder and Racketeering Act 1B charges the same two defendants with attempted murder.  Racketeering Acts 2A, 2B, and 2C contain allegations of attempted murder, attempted arson, and conspiracy to commit arson against Melvin J. Chancey.  Racketeering Act 3 alleges attempted extortion against Melvin J. Chancey.  Racketeering Act 4 charges Melvin J. Chancey and David G. Ohlendorf with robbery.  Racketeering Acts 5A and 5B charge James L. White and Richard A. Abrams with conspiracy to commit murder and attempted murder.  Racketeering Acts 6A and 6B allege conspiracy to commit murder and attempted murder against Melvin J. Chancey and David

G. Ohlendorf. Racketeering Act 7 charges James L. White and Richard A. Abrams with robbery. Racketeering Acts 8A and 8B contain allegations against James L. White for conspiracy to commit arson and attempted arson. Racketeering Act 9 charges James L. White with witness tampering. Racketeering Acts 10A and 10B contain allegations of conspiracy to murder and attempted murder against David G. Ohlendorf. Racketeering Acts 11A and 11B allege conspiracy to commit murder and attempted murder against David G. Ohlendorf, James L. White, and Richard A. Abrams. Racketeering Act 12 charges all defendants with a narcotics distribution conspiracy.

20. The legislative history of the Bail Reform Act of 1984 repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger and should be detained prior to trial. *United States v. Coleman*, 777 F.2d 888, 894 (3rd Cir. 1985). Threats of violence directed against victims, their families, and even police officers, is ample proof of defendants' willingness and predisposition to engage in future criminal activity in order to obtain their illegal goals. *United States v. Howard*, 691 F.Supp. 1398, 1400 (S.D. Florida 1988).

21. Government witnesses at trial will include police officers, citizen-victims, members of rival motorcycle gangs, and former Hells Angels members who have been beaten, shot, and stabbed by the Hells Angels. The defendants pose a danger to the community and to government witnesses.

22. Each defendant held a leadership position with the Hells Angels organization. As stated in the indictment, "Defendant Melvin J. Chancey, a/k/a Road and Mel, became a member of the Chicago Chapter of the Hells Angels in or about 1994. He was President of the Chicago Chapter from 1997 until 1999." (R.1; p.5, ¶5a) "James L. White, a/k/a J.W., became a member of the Rockford Chapter in or about 1994 and was the chapter Treasurer in 1997. He became the

9

chapter President in 1998 and continued in that position until at least the date of this indictment." (R.1; p. 5, ¶5b) "David G. Ohlendorf, a/k/a Pulley, was a rank and file member of the Chicago Chapter from in or about 1994 through 2001. In 2002, he became a member of the Illinois Nomad (Spring Valley) Chapter and held the position of President until at least the date of this indictment." (R.1; p.6, ¶5c) "Richard A. Abrams was a member of the Rockford Chapter from in or about 1994 through 2001, and was Vice President from 1997 through 2001. In 2002, Abrams became a member of the Illinois Nomad (Spring Valley) Chapter and held the position of Secretary-Treasurer until at least the date of this indictment." (R.1; p.6, ¶5d)

23. All four defendants were leaders of a violent criminal gang. This fact alone militates strongly in favor of detention. As the Court in *United States v. Gotti*, 2002 WL 31946775 (E.D.N.Y. 2002) wrote:

> [L]eaders of criminal gangs who direct the commission of violent crimes by others can be detained prior to trial under the circumstances prescribed in the Act. *United States v. Columbo*, 777 F.2d 96, 98 (2d Cir. 1985). Moreover, the defendant need not be shown to have personally engaged in acts of physical violence before being found to be a danger to the community. *Id.; United States v. Defede*, 7 F.Supp.2d at 395 (holding that the "threat inherent in [defendant's] continued liberty need not stem directly from the threat of violent acts by him"). As the court in *United States v. Bellomo* noted, "the leader of a criminal enterprise with the ability to order members of that enterprise to engage in criminal actions may be a danger to the community despite the lack of evidence that he directly participated in many, if any, of the charged crimes." 944 F.Supp.1160, 1166 (S.D.N.Y. 1996)(citing *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

*United States v. Gotti*, 2002 WL 31946775, p.4 (E.D.N.Y. 2002). *See also United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985); *United States v. Patriarca*, 776 F.Supp. 593, 597 (D.Mass. 1991).

24. Furthermore, many of the restrictive bond conditions offered by the defendants do not address the dangerousness of a criminal boss. *See United States v. Orena*, 986 F.2d 628, 632

(2d Cir. 1993); *United States v. Tortora*, 922 F.2d 880, 886-87 (1st Cir. 1990).

## CONCLUSION

WHEREFORE, for the reasons stated above, the government requests that this Honorable Court detain the defendants.

Respectfully submitted,

UNITED STATES OF AMERICA

JAN PAUL MILLER
UNITED STATES ATTORNEY

s/K. Tate Chambers
K. Tate Chambers
Assistant United States Attorney
One Technology Plaza
211 Fulton, Suite 400
Peoria, Illinois 61602
Telephone: (309) 671-7050

CERTIFICATE OF SERVICE

It is hereby certified that I electronically filed the foregoing **GOVERNMENT'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS FOR REVIEW AND REVOCATION OF DETENTION ORDERS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties listed below.

> Daniel G. O'Day
> Attorney at Law
> 415 Hamilton Blvd.
> Peoria, IL 61602-1102
>
> Mark A. Eisenburg
> Attorney at Law
> 308 E. Washington Ave.
> P.O. Box 1069
> Madison, WI 53701-1069
>
> George F. Taseff
> Assistant Federal Defender
> 401 Main Street, Suite 1500
> Peoria, Illinois 61602
>
> Rob Alvarado
> Assistant Federal Defender
> 401 Main Street, Suite 1500
> Peoria, Illinois 61602

Service of the foregoing has also been made on the parties listed below by depositing a copy thereof in the United States mail, postage prepaid, addressed to:

> Peter J. Wilkes
> Attorney at Law
> 7060 Centennial Dr., Suite 104
> Tinley Park, IL 60477
>
> Steven C. Rueckert
> Attorney at Law
> 53 W. Jackson Blvd., Suite 1410
> Chicago, IL 60604

| | |
|---|---|
| <u>Feb. 28, 2005</u><br>Date | <u>s/Diane Hayes</u><br>Diane Hayes<br>Paralegal Specialist |