E-FILED
Wednesday, 18 January, 2006 02:01:39 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 04-10084 |
| ) | |
| JAMES L. WHITE, a/k/a J.W., ) | VIO: 18 U.S.C. §1962(c), §1962(d) |
| DAVID G. OHLENDORF, a/k/a ) | 21 U.S.C. §§846 and |
| PULLEY, and ) | 841(b)(1)(A) |
| RICHARD A. ABRAMS, ) | |
| ) | |
| Defendants. ) | |

FILED
JAN 1 8 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## SECOND SUPERCEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE (RICO)
## (18 U.S.C. §1962(c))

### THE ENTERPRISE

1.    At all times relevant to this indictment,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS

the defendants, and others known and unknown, were members and associates

of the Chicago, Rockford, and Illinois Nomad (Spring Valley) Chapters of the

Hells Angels, a criminal enterprise whose members and associates engaged in a

pattern of racketeering activity involving attempted murder, robbery, intimidation, extortion, attempted arson, narcotics distribution, and conspiracy to do the same.

2.     At various times relevant to this Indictment,

a.     The Hells Angels Motorcycle Club, better known as (and hereinafter referred to as) the Hells Angels, was an international organization.

b.     Within the United States, the Hells Angels was composed of individual chapters located in various locations throughout the United States. Each chapter had a president, vice-president, treasurer/secretary and enforcer, as well as general members.

c.     The various chapters were grouped into two regions, the East Region and the West Region.

d.     Prior to 1994, the Illinois chapters of the Hells Angels were Hells Henchmen chapters. The Hells Henchmen became Hells Angels in 1994.

e.     The Chicago Chapter of the Hells Angels was a local chapter of the Eastern Region of the international club. This chapter was active in the northern Illinois and northwestern Indiana areas. From in or about October 14, 1993, (as Hells Henchmen) to in or about November 7, 1994, the chapter's headquarters was located in a clubhouse at 1734 Grand Avenue, Chicago, Illinois.

2

From June 24, 1997, until the present, the chapter was housed in a clubhouse located at 15609 South Halsted Road, Harvey, Illinois. The chapter officers were elected, and chapter members were identified by the apparel ("colors") and emblems ("patches") they wore.

f.     The Rockford Chapter of the Hells Angels was a local chapter of the Eastern Region of the international club. This chapter was active in the northwestern Illinois and southern Wisconsin areas. From in or about July 1983, (as Hells Henchmen) to in or about September 8, 1998, the chapter was housed in a clubhouse located at 1622 W. State Street, Rockford, Illinois. From September 8, 1998, until the present, the chapter's headquarters was located in a clubhouse at 1109 Rock Street, Rockford, Illinois. The chapter officers were elected, and chapter members were identified by the apparel ("colors") and emblems ("patches") they wore.

g.     The Illinois Nomad (Spring Valley) Chapter of the Hells Angels was a local chapter of the Eastern Region of the international club. This chapter was active in the central and western Illinois areas. This chapter did not have a clubhouse but met in locations in the Central District of Illinois (McNabb, Illinois) and the Northern District of Illinois (LaSalle, Illinois). The chapter

3

officers were elected, and chapter members were identified by the apparel ("colors") and emblems ("patches") they wore.

3. The Chicago, Rockford, and Illinois Nomad (Spring Valley) Chapters of the Hells Angels, including its leadership, membership and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## PURPOSES OF THE ENTERPRISE

4. The purposes of the enterprise included the following:

a. Preserving and protecting the power, territory, and profits of the enterprise through the use of attempted murder, robbery, witness intimidation and retaliation, narcotics trafficking, extortion, and attempted arson.

b. Enriching the members and associates of the enterprise through, among other things, attempted murder, robbery, witness intimidation and retaliation, extortion, and narcotics distribution.

4

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its members and associates through violence and threats of violence.

## ROLES OF THE DEFENDANTS

5. The defendants,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS,

participated in the operation and management of the enterprise, and acted as leaders of the enterprise who directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

a. James L. White, a/k/a J.W., became a member of the Rockford Chapter in or about 1994 and was the chapter Treasurer in 1997. He became the chapter President in 1998 and continued in that position until at least the date of this indictment.

b. David G. Ohlendorf, a/k/a Pulley, was a rank and file member of the Chicago Chapter from in or about 1994 through 2001. In 2002, he

5

became a member of the Illinois Nomad (Spring Valley) Chapter and held the position of President until at least the date of this indictment.

c.    Richard A. Abrams was a member of the Rockford Chapter from in or about 1994 through 2001, and was Vice President from 1997 through 2001. In 2002, Abrams became a member of the Illinois Nomad (Spring Valley) Chapter and held the position of Secretary-Treasurer until at least the date of this indictment.

## MEANS AND METHODS OF THE ENTERPRISE

6.    Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.    Members of the enterprise and their associates conspired to commit, threatened to commit, and committed racketeering acts involving murder, robbery, witness intimidation and retaliation, extortion, narcotics trafficking, and arson to protect and expand the enterprise's criminal operations.

b.    Members of the enterprise and their associates used and threatened to use physical violence against various individuals.

c.    Members of the enterprise and their associates possessed, transported and used firearms, and other deadly weapons and destructive

6

devices, including pipe bombs, for various purposes, including protection and intimidation, and to otherwise further the goals of the enterprise.

     d.     Members of the enterprise and their associates trafficked in cocaine and methamphetamine.

     e.     Members of the enterprise and their associates claimed geographic territories as the exclusive territory of the Hells Angels and asserted that no other motorcycle clubs could operate or display "colors" within said territories without the consent of the Hells Angels.

     f.     Members of the enterprise and their associates committed acts of violence, witness intimidation and retaliation, and threats against members and associates of rival motorcycle clubs.

     g.     Leaders of the enterprise and their associates withheld benefits and privileges and threatened to withhold benefits and privileges from other members of the enterprise, and ordered the payment of fines by other such members for failing to abide by the rules of the organization. These punishments were used by the leaders of the enterprise in order to further the goals of the enterprise and to avoid detection by law enforcement authorities.

7

h.     Members of the enterprise and their associates used threats,

intimidation, and physical force against individuals with the intent to hinder,

delay, and prevent the communication to law enforcement authorities of

information related to the commission and probable commission of criminal

offenses.

I.     Members of the enterprise and their associates traveled in

interstate commerce in order to further the goals of the enterprise.

## THE RACKETEERING VIOLATION

7.     From in or about 1994, through in or about the present, in the

Central District of Illinois and elsewhere,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS,

together with others known and unknown to the grand jury, being persons

employed by and associated with the enterprise described above, which was an

enterprise engaged in, and the activities of which affected, interstate and foreign

commerce, unlawfully and knowingly conducted and participated, directly and

indirectly, in the conduct of the affairs of the enterprise through a pattern of

racketeering activity, to wit: through the commission of Racketeering Acts 1

through 12, as set forth below.

8

## THE PATTERN OF RACKETEERING ACTIVITY

8. The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

### Racketeering Act 1
### (Conspiracy to Murder)

9. From in or about 1993 through in or about 1999, both dates being approximate and inclusive, within the Central District of Illinois, the Northern District of Illinois and elsewhere, the defendants,

### JAMES L. WHITE, a/k/a J.W.,
### DAVID G. OHLENDORF, a/k/a PULLEY, and
### RICHARD A. ABRAMS,

together with others, including others employed by and associated with the Chicago, Rockford, and Illinois Nomad (Spring Valley) Chapters of the Hells Angels Motorcycle Club, including Melvin J. Chancey, a/k/a Road and Mel, committed an act involving murder, with intent to kill and without lawful justification, in that the defendants, unlawfully and knowingly conspired and agreed with each other, and with others, to commit the offense of First Degree Murder, in violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes, and performed acts in furtherance of that agreement by planning, agreeing and attempting to murder by shooting, bombing, stabbing and beating members of the Outlaw Motorcycle Club and other clubs affiliated

9

with the Outlaw Motorcycle Club, in violation of Section 8-2(a) of Act 5 of

Chapter 720 of the Illinois Compiled Statutes.

## Racketeering Act 2
## (Attempted Murder)

10.    On or about June 25, 1994, in Cook County, Illinois,

### DAVID G. OHLENDORF, a/k/a PULLEY,

committed an act involving murder, in that the defendant, with the intent to kill

an individual, and without lawful justification, unlawfully and knowingly

performed a substantial step toward committing First Degree Murder, by

shooting the chapter president of another motorcycle club in the right chest and

right leg while he was riding a motorcycle on an expressway, in violation of

Sections 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled

Statutes.

## Racketeering Act 3
## (Robbery)

11.    On or about July 3, 1997, in Cook County, Illinois,

### DAVID G. OHLENDORF, a/k/a PULLEY,

and others, including Melvin J. Chancey, a/k/a Road and Mel, committed an act

involving robbery, in that said defendant unlawfully and knowingly took

property, being a Harley Davidson motorcycle, clothing, and jewelry, from the

10

person and presence of a former member of the Hells Angels, referred to

hereinafter as M.M., by the use of force – that is, by physically beating M.M. and

breaking his jaw – and threatening the imminent use of more force, in violation

of Section 18-1 of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

### Racketeering Act 4
### (Attempted Murder)

12.    On or about September 25, 1997, in Winnebago County, Illinois,

### JAMES L. WHITE, a/k/a J.W.,
### and
### RICHARD A. ABRAMS,

and others, committed an act involving murder, in that the defendants, with the

intent to kill an individual, and without lawful justification, unlawfully and

knowingly performed a substantial step toward committing First Degree Murder

against a member of another motorcycle club when, without lawful justification

and while armed with a dangerous weapon, they forcibly entered a residence

with the intent to kill a member of the other club, in violation of Sections 8-4(a)

and 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

### Racketeering Act 5A
### (Conspiracy to Commit Murder)

13.    In or about December 1997, in Cook County, Illinois,

### DAVID G. OHLENDORF, a/k/a PULLEY,

11

and others, including Melvin J. Chancey, a/k/a Road and Mel, committed an act

involving murder, with intent to kill and without lawful justification, in that the

defendant unlawfully and knowingly conspired and agreed with others to

commit the offense of First Degree Murder, in violation of Section 9-1(a)(1) of Act

5 of Chapter 720 of the Illinois Compiled Statutes, and performed an act in

furtherance of that agreement by taking steps to murder an individual who is

referred to as B.K., in violation of Section 8-2(a) of Act 5 of Chapter 720 of the

Illinois Compiled Statutes.

## Racketeering Act 5B
## (Attempted Murder)

14.     On or about December 15, 1997, in Cook County, Illinois,

### DAVID G. OHLENDORF, a/k/a PULLEY,

and other persons, including Melvin J. Chancey, a/k/a Road and Mel,

committed an act involving murder, in that they, with the intent to kill an

individual, and without lawful justification, unlawfully and knowingly

performed a substantial step toward committing First Degree Murder, when they

went to a residence in Evergreen Park, Illinois, waited for an individual who is

referred to hereinafter as B.K., beat B.K. with fists, feet and a baseball bat, bound

B.K. with duct tape, placed the barrel of a handgun in B.K.'s mouth, and pulled

12

the trigger, in violation of Sections 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of

the Illinois Compiled Statutes.

## Racketeering Act 6
## (Robbery)

15.    On or about January 6, 1998, in Winnebago County, Illinois,

## JAMES L. WHITE, a/k/a J.W.,
## and
## RICHARD A. ABRAMS,

and others, committed an act involving robbery, in that said defendants

unlawfully and knowingly took property, being a Harley Davidson motorcycle,

the title for the Harley Davidson motorcycle, and clothing, from the person and

presence of a former member of the Hells Angels, hereinafter referred to as A.T.,

by the use of force and threatening the imminent use of force, in violation of

Section 18-1 of Act 5 of Chapter 720 of the Illinois Compiled Statutes, when they

beat and kicked A.T. and demanded that he surrender to them his motorcycle, its

title and certain clothing.

## Racketeering Act 7A
## (Conspiracy to Commit Arson)

16.    In or about May 1998, in Stephenson County, Illinois and elsewhere,

## JAMES L. WHITE, a/k/a J.W.,

13

and another person, committed an act involving arson in that the defendant
unlawfully and knowingly conspired and agreed with others to commit arson in
violation of Section 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled
Statutes and performed an act in furtherance of that agreement, in that he and
another person agreed to locate and set fire to another motorcycle club's
clubhouse in Davis, Illinois, all in violation of Section 8-2(a) of Act 5 of Chapter
720 of the Illinois Compiled Statutes.

## Racketeering Act 7B
## (Attempted Arson)

17.    On or about May 25, 1998, in Stephenson County, Illinois,

## JAMES L. WHITE, a/k/a J.W.,

and another person, committed an act involving arson in that, with the intent to
commit arson, they unlawfully and knowingly performed a substantial step
toward committing arson, when they drove to Davis, Illinois, to conduct
surveillance of the clubhouse of another motorcycle club and developed plans to
burn down the clubhouse by spraying or pouring gasoline on the inside of the
clubhouse and igniting the gasoline with candles or flares, in violation of Sections
8-4(a) and 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

14

## Racketeering Act 8A
### (Receipt, Possession and Sale of a Stolen Motor Vehicle)

18.    On or about December 17, 1998, in the Northern District of Illinois,

the defendant herein,

### JAMES L. WHITE, a/k/a J.W.,

received, possessed and sold a motor vehicle, to wit: a 1991 Chevrolet Camaro,

knowing the same to have been stolen and which crossed state lines after it was

stolen.

In violation of Title 18, United States Code, Section 2313.

## Racketeering Act 8B
### (Possession and Sale of Motor Vehicle Part
### With Obliterated Identification Number)

19.    On or about December 17, 1998, in the Northern District of Illinois,

the defendant herein,

### JAMES L. WHITE, a/k/a J.W.,

possessed with the intent to sell, and sold, and aided and abetted the possession

with intent to sell and sale of a motor vehicle part, to wit: the engine from a 1991

Chevrolet Camaro, knowing that the identification number for such part had

been removed, obliterated and tampered with.

In violation of Title 18, United States Code, Section 2321(a).

15

## Racketeering Act 9
## (Witness Tampering)

20. On or about January 10, 1999, in Cook County, Illinois, and elsewhere,

## JAMES L. WHITE, a/k/a J.W.,

and others, did knowingly intimidate, use physical force against, threaten, attempt to intimidate, attempt to use physical force against, and attempt to threaten a former Hells Angels member, hereinafter referred to as R.R., with the intent to hinder, delay, and prevent the communication to a law enforcement officer, (which, in fact, included a federal law enforcement officer) of information relating to the commission or possible commission of a Federal Offense, namely Racketeering, in violation of Title 18, United States Code, Section 1962(c), and Conspiracy to Commit Racketeering, in violation of Title 18, United States Code, Section 1962(d), in that the defendant forcibly entered R.R.'s private residence and drew a handgun from his waistband for the purpose of shooting or threatening R.R. whom the defendant believed was cooperating with law enforcement officials.

All in violation of Title 18, United States Code, Section 1512(b)(3).

16

The following acts, any one of each alone, constitute the commission of
Racketeering Act 10:

## Racketeering Act 10A
### (Using Force to Influence and Prevent Testimony)

21.    From in or about 2002, through in or about 2003, in the Central

District of Illinois, and elsewhere, the defendants,

## JAMES L. WHITE, a/k/a J.W.,
### and
## DAVID G. OHLENDORF, a/k/a PULLEY,

did knowingly use physical force and the threat of physical force, and did

knowingly aid and abet the use of physical force and the threat of physical force

against M.V., Jr. and T.P. with the intent to influence and prevent the testimony

of M.V., Jr., and T.P. in an official proceeding to wit:  a federal grand jury

investigation relating to the commission or possible commission of a federal

offense, namely, Racketeering, in violation of Title 18, United States Code,

Section 1962(c) and Conspiracy to Commit Racketeering in violation of Title 18,

United States Code, Section 1962(d), in that defendants White and Ohlendorf

contacted T.P. and threatened her and her boyfriend M.V., Jr. for cooperating

with law enforcement officials and after Ohlendorf determined that M.V., Jr. was

cooperating, T.P. was struck and threatened.

In violation of Title 18, United States Code, Section 1512(a)(2)(A).

17

### Racketeering Act 10B
### (Tampering with a Witness, Victim or an Informant by
### Intimidation, Physical Force, Threats or Misleading Conduct)

22.    From in or about 2002, through in or about 2003, in the Central

District of Illinois, and elsewhere, the defendants,

### JAMES L. WHITE, a/k/a J.W.,
### and
### DAVID G. OHLENDORF, a/k/a PULLEY,

did knowingly: (1) intimidate; (2) threaten; (3) attempt to intimidate; and

(4) attempt to threaten, M.V., Jr. and T.P. with the intent to influence, delay and

prevent the testimony of any person in an official proceeding, namely a federal

grand jury investigation relating to the commission and possible commission of a

federal offense, namely, Racketeering, in violation of Title 18, United States Code,

Section 1962(c) and Conspiracy to Commit Racketeering in violation of Title 18,

United States Code, Section 1962(d), in that defendants WHITE and

OHLENDORF contacted T.P. and threatened her and her boyfriend M.V., Jr. for

cooperating with law enforcement officials.

In violation of Title 18, United States Code, Section 1512(b)(1).

18

## Racketeering Act 10C
## (Obstructing Justice by Retaliating Against
## a Witness, Victim or an Informant)

23.    In or about 2002, through in or about 2003, in the Central District of

Illinois, and elsewhere, the defendants,

## JAMES L. WHITE, a/k/a J.W.,
## and
## DAVID G. OHLENDORF, a/k/a PULLEY,

did knowingly: (1) cause bodily injury to; (2) threaten to cause bodily injury to;

and (3) attempt to cause bodily injury to M.V., Jr. and T.P. by causing others to

strike T.P., such conduct being taken with the intent of retaliating against M.V.,

Jr. and T.P. for any information given by M.V., Jr. and T.P., to law enforcement

officers relating to the commission or possible commission of a federal offense,

namely, Racketeering in violation of Title 18, United States Code, Section 1962(c)

and Conspiracy to Commit Racketeering in violation of Title 18, United States

Code, Section 1962(d), in violation of Title 18, United States Code, Section

1513(a)(2).

## Racketeering Act 11A
## (Conspiracy to Commit Murder)

24.    In or about August 2002, in Peoria County, Illinois, and LaSalle

County, Illinois, and elsewhere,

## DAVID G. OHLENDORF, a/k/a PULLEY,

and others, committed an act involving murder, with intent to kill and without lawful justification, in that the defendant unlawfully and knowingly conspired and agreed with others to commit the offense of First Degree Murder, in violation of Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes, and performed an act in furtherance of that agreement by taking steps to murder a member of another motorcycle club, in that he and others made plans to locate and murder members of the other club at the Route 66 Speedway, in violation of Section 8-2(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes.

## Racketeering Act 11B
## (Attempted Murder)

25.    In or about August 2002, in Peoria County, Illinois and LaSalle County, Illinois, and elsewhere,

## DAVID G. OHLENDORF, a/k/a PULLEY,

and others, committed an act involving murder, in that, with the intent to kill a member of another motorcycle club, and without lawful justification, they unlawfully and knowingly performed a substantial step toward committing First Degree Murder, when the defendant planned and directed others to carry out the plans to locate and murder members of another motorcycle club at the Route 66

Speedway, in violation of Section 8-4(a) and 9-1(a)(1) of Act 5 of Chapter 720 of

the Illinois Compiled Statutes.

## Racketeering Act 12
## (Narcotics Distribution Conspiracy)

26.    a.    From in or about 1993 to in or about 2002, within the Central

and Northern Districts of Illinois and elsewhere,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS,

knowingly combined, conspired, and agreed with each other and with others to

commit certain acts in violation of the laws of the United States, to-wit: (A) to

knowingly possess with intent to distribute cocaine, a Schedule II controlled

substance; (B) to knowingly distribute cocaine, a Schedule II controlled

substance; (C) to knowingly possess with intent to distribute methamphetamine,

a Schedule I controlled substance; and (D) to knowingly distribute

methamphetamine, a Schedule I controlled substance, all in violation of Title 21,

United States Code, Section 841(a)(1).

b.    It was part of the conspiracy that, at various times, certain

defendants possessed cocaine and methamphetamine with intent to distribute it

and actually distributed cocaine and methamphetamine.

21

c.    This conspiracy involved the agreement to distribute more than twenty kilograms of cocaine and more than twenty kilograms of meth-amphetamine.

d.    In furtherance of the conspiracy and to accomplish its objectives of possessing with intent to distribute and distributing cocaine and methamphetamine, the defendants and others committed overt acts, including but not limited to the following:  obtaining cocaine and methamphetamine, transporting cocaine and methamphetamine, weighing and repackaging cocaine and methamphetamine, distributing cocaine and methamphetamine, and collecting money from the sale of cocaine and methamphetamine.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

All in violation of Title 18, United States Code, Section 1962(c).

## COUNT TWO
## (The Racketeering Conspiracy)

The Grand Jury further charges:

1.    Paragraphs 1 - 6 in Count One are hereby realleged and

incorporated as if fully set forth herein.

2.    From in or about 1994 through in or about 2002, both dates being

approximate and inclusive, within the Central District of Illinois and elsewhere,

the defendants,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS,

together with others, being persons employed by and associated with the

Chicago, Rockford, and Illinois Nomad (Spring Valley) Chapters of the Hells

Angels Motorcycle Club, an enterprise which engaged in, and the activities of

which affected interstate commerce, knowingly and intentionally conspired to

violate 18 U.S.C. § 1962(c), that is,, to conduct and participate, directly and

indirectly, in the conduct of the affairs of that enterprise through a pattern of

racketeering activity, as that term is defined by 18 U.S.C. §§ 1961 (1) and (5).  The

pattern of racketeering activity through which the defendants agreed to conduct

the affairs of the enterprise consisted of multiple acts indictable under the

following provisions of federal law:

23

A. 18 U.S.C. § 1951 (extortion);

B. 18 U.S.C. § 1512 (witness tampering);

C. 18 U.S.C. § 1513 (retaliation against witnesses);

D. 18 U.S.C. § 2313 (possession and receipt of stolen motor vehicles);

E. 18 U.S.C. § 2321 (trafficking in certain motor vehicle parts);

and multiple acts involving:

A. Murder, chargeable under the following provisions of state law: Section 8-2(a), Section 8-4(a) and Section 9-1(a)(1) of Act 5 of Chapter 720 of the Illinois Compiled Statutes;

B. Robbery, chargeable under the following provisions of state law: Section 18-1 of Act 5 of Chapter 720 of the Illinois Compiled Statutes; and

C. Arson, chargeable under the following provisions of state law: Section 8-2(a), Section 8-4(a) and Section 20-1(a) of Act 5 of Chapter 720 of the Illinois Compiled Statutes;

and multiple acts involving the distribution of narcotic drug controlled substances, including cocaine and methamphetamine, in violation of the laws of the Title 21 of the United States Code, Sections 841(a)(1)(A) and 846.

3.     It was further part of the conspiracy that the defendants agreed that

a conspirator would commit at least two acts of racketeering activity in the

conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT THREE
### (Narcotics Distribution Conspiracy)

1.     From in or about 1993 to in or about 2002, within the Central District

of Illinois and elsewhere,

### JAMES L. WHITE, a/k/a J.W.;
### DAVID G. OHLENDORF, a/k/a PULLEY; and
### RICHARD A. ABRAMS,

the defendants herein, knowingly combined, conspired and agreed with each

other and with others to commit certain acts in violation of the laws of the United

States, to-wit: (A) to knowingly possess with the intent to distribute cocaine, a

Schedule II controlled substance; and (B) to knowingly distribute cocaine, a

Schedule II controlled substance; (C) to knowingly possess with intent to

distribute methamphetamine, a Schedule I controlled substance; and (D) to

knowingly distribute methamphetamine, a Schedule I controlled substance, all in

violation of Title 21, United States Code, Section 841(a)(1).

2.    It was part of the conspiracy that certain of the defendants would at various times possess cocaine and methamphetamine with intent to distribute and distribute cocaine and methamphetamine.

3.    This conspiracy involved the agreement to distribute more than twenty kilograms of cocaine and more than twenty kilograms of methamphetamine.

4.    In furtherance of the conspiracy and to accomplish its objectives of possessing with intent to distribute and distributing cocaine and methamphetamine, the defendants and others committed overt acts, including but not limited to the following:  obtaining cocaine and methamphetamine, transporting cocaine and methamphetamine, weighing and repackaging cocaine and methamphetamine, distributing cocaine and methamphetamine, and collecting money from the sale of cocaine and methamphetamine.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

## COUNT FOUR
## (FORFEITURE - RICO)

1.    Pursuant to Title 18, United States Code, Section 1963(a), each defendant who is convicted of the offense set forth in Counts One and Two shall forfeit to the United States the following property:

26

       a.     Any interest acquired or maintained in violation of Section 1962;

       b.     Any interest in, security of, claim against, or property or contractual rights of any kind affording a source of influence over the enterprise described in Counts One and Two which was established, operated, controlled and conducted in violation of Title 18, United States Code, Section 1962;

       c.     Any property constituting or derived from proceeds obtained directly and indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962;

2.     The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Sections 1963(a)(1), (a)(2), and (a)(3), include, but are not limited to:

       a.     at least $816,000.

   The United States seeks a judgment in favor of the United States against each of the defendants for that amount. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount subject to forfeiture under this paragraph.

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

27

a.  Cannot be located upon the exercise of due diligence;

b.  Has been transferred or sold to, or deposited with, a third person;

c.  Has been placed beyond the jurisdiction of the court;

d.  Has been substantially diminished in value; or

e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other real or personal property of the said defendants up to the value of the above forfeitable property.

## COUNT FIVE
## (FORFEITURE - NARCOTICS DISTRIBUTION CONSPIRACY)

1.  Pursuant to Title 21, United States Code, Section 853, each defendant who is convicted of the offense set forth in Count Three shall forfeit to the United States the following property:

a.  Any property constituting or derived from proceeds obtained directly and indirectly from the cocaine and methamphetamine distribution conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);

b.  Any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the cocaine and

28

methamphetamine distribution conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A);

2.     The property subject to forfeiture pursuant to paragraph 1 includes, but is not limited to, the following:

a.     A sum of money in the approximate amount of $624,000, which represents the proceeds derived from the criminal conduct described in Count Three of this indictment and which is subject to forfeiture to the United States of America pursuant to Title 21 United States Code, Section 853(a)(1). The United States seeks a judgment in favor of the United States against each of the defendants for that amount. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount subject to forfeiture under this paragraph.

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

a.     Cannot be located upon the exercise of due diligence;

b.     Has been transferred or sold to, or deposited with, a third person;

c.     Has been placed beyond the jurisdiction of the court;

d.     Has been substantially diminished in value; or

>     e.     Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other real or personal property of the said

defendants up to the value of the above forfeitable property.

A True Bill,

s/ Foreperson

**Foreperson**

s/ U.S. Attorney

**RODGER A. HEATON**
UNITED STATES ATTORNEY
KTC/ksr